**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NATASHA GRIFFITH, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | Civil Action No. 1:16-cv-1541-CKK |
| v. | ) | |
| | ) | |
| EDUCAP, INC., et al. | ) | |
| | ) | |
| *Defendants* | ) | |

**THIRD AMENDED COMPLAINT**

Natasha Griffith ("Griffith") hereby files her Third Amended Complaint against EduCap, Inc. ("EduCap"), Weinstock, Friedman & Friedman ("Weinstock"), and HSBC Bank USA, N.A. ("HSBC") (collectively "Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, *et seq.*, District of Columbia Code § 28-3814 *et seq.*, abuse of process and malicious prosecution.

**I.**

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 in that Griffith's FDCPA claims involve a federal question.

2. This Court also has jurisdiction under 28 U.S.C. § 1332(a) in that complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

3. Venue is proper under 28 U.S.C. § 1391(b)(2) in that all of the Defendants' acts or omissions giving rise to Griffith's claims occurred in this jurisdiction.

## II.

## PARTIES

4. Griffith is a sui juris adult resident in the District of Columbia.

5. Griffith is a consumer as defined by 15 U.S.C. § 1692a(3) in that the defaulted private student loan at issue was for personal, family or household purposes for the primary borrower, Robert Blocker ("Blocker"), to attend Bowie State University.

6. EduCap is, and at times mentioned herein was, a Maryland non-profit corporation with a principal place of business at 45610 Woodland Road, Suite 370, Sterling, VA 20166-4220.

7. EduCap is, and at all times mentioned herein was, a debt collector as defined by 15 U.S.C. § 1692a(6) in that they regularly engage, directly or indirectly, in the business of collecting defaulted private student loans under the Loan to Learn program, including filing the underlying debt collection lawsuit against Griffith to collect the loan at issue.

8. EduCap is, and at all times mentioned herein was, a debt collector as defined by D.C. Code §§ 28-3814(b)(2)-(3) in that they engage, directly or indirectly, in collecting defaulted private student loans under the Loan to Learn program, including filing the underlying debt collection lawsuit against Griffith to collect the loan at issue.

9. HSBC is, and at times mentioned herein was, a national banking association with a principal place of business at 452 Fifth Avenue, New York, New York.

10. HSBC is, and at all times mentioned herein was, a debt collector as defined by D.C. Code §§ 28-3814(b)(2)-(3) in that they engaged, directly or indirectly, in collecting the loan at issue as a purported creditor, seller or lender, including filing the underlying debt collection lawsuit against Griffith.

11.     Weinstock is, and at all times mentioned herein was, a debt collector as defined by 15 U.S.C. § 1692a(6) in that they are primarily engaged in the business of collecting defaulted consumer debts alleged to be owed to another, including filing the underlying debt collection lawsuit against Griffith to collect the loan at issue.

12.     Weinstock is, and at all times mentioned herein was, a debt collector as defined by D.C. Code §§ 28-3814(b)(2)-(3) in that they are directly engaged in the business of collecting defaulted debts alleged to be owed to another, including filing the underlying debt collection lawsuit against Griffith to collect the loan at issue.

### III.

### FACTUAL ALLEGATIONS

**A. The L2L Education Loan Trust 2006-1 (the "Trust")**

13.     The Trust is an asset-backed securities transaction ("ABS") sponsored by EduCap and backed by a pool of direct-to-consumer loans originated by various private banks under EduCap's Loan to Learn program, including HSBC.

14.     The essential feature of a trust is the complete separation of the legal and equitable interests in the assets conveyed to ensure total isolation from the reach of the transferors and their creditors. Savvy investors, guided by rating agencies, are unwilling to pay top-dollar for ABS unless: (1) the transferor has relinquished all legal title by conveying the assets to a disinterested third party in a "true sale;" (2) the transferred assets are "bankruptcy remote"—meaning those assets cannot be reclaimed by the transferor or its creditors in the event of the transferor's insolvency; and (3) all formalities are strictly observed to ensure the complete legal separation of the transferred assets from the transferor.[1]

---

[1] These key factors, along with other factors used by private rating agencies to rate asset-backed securities, are

15. The Trust was created as part of a complex financial arrangement designed by EduCap, HSBC Securities (USA), Inc., L2L Funding LLC, Bryant Park Funding LLC, and HSBC to convert future receivables on Loan to Learn loans into immediate cash while, at the same time, insulating HSBC and EduCap from potential risk.

16. The roles, responsibilities, terms and conditions of each participant are outlined in the Loan Agreement dated December 28, 2005, Student Loan Sale and Participation Agreement dated January 27, 2006, and Letter Agreement dated August 8, 2007 ("Agreements").

17. Although the overall structure is complex, the role of each participant is relatively simple. Student loans were originated by HSBC and sold to EduCap. EduCap, in turn, conveyed legal title to the loans to the Trust. The Trust then issued securities to the general public that were backed by the future receivables on the student loans transferred to the Trust.

18. Thus, neither HSBC nor EduCap had legal title to the loans.

**B. High Noon**

19. If everything had gone as planned, HSBC would have been paid by selling the loans to EduCap, EduCap would have been paid by the Trust, the Trust would have been paid by the investors who purchased the notes, and the investors would have been paid by the student borrowers.

20. But in mid-2007, EduCap and HSBC's plan began to unravel in a failure of colossal proportions. Overzealous subprime lending resulted in the collapse of the securitization market and a severe recession.[2] HSBC's stock prices plummeted from a record adjusted high of

---

discussed in Cohn, Michael J. (1998), "*Asset Securitization: How Remote Is Bankruptcy Remote?*" Hofstra Law Review: Vol. 26: Iss. 4, Article 4, http://scholarlycommons.law.hofstra.edu/hlr/vol26/iss4/4.

[2] See Nat'l Comm'n on the Causes of the Fin. & Econ. Crisis: *The Financial Crisis Inquiry Report: Final Report* (2011), at http://fcic-static.law.stanford.edu/cdn_media/fcic-reports/fcic_final_report_full.pdf.

$99.52 per share on September 30, 2007, to a record adjusted low of $28.22 per share on March 1, 2009.[3]

21.     To avoid financial collapse when EduCap could no longer purchase loans, HSBC was forced to retain its loans. HSBC securitized those loans—along with thousands of others—by pooling and selling ABS to investors generating millions of dollars to improve its balance sheet and financial performance ratios.[4] Thus, HSBC also had no legal right, title or interests in the loans it retained.

22.     Meanwhile, EduCap hatched a plan to use the courts to obtain borrower payment proceeds for defaulted loans that should have gone to the hapless investors who purchased the securities from the Trust. Although investors were informed that they bore the risk of loss on defaulted student loans, EduCap has been attempting to recover, for themselves, borrower payment proceeds that should have gone to the investors.

23.     EduCap has been filing thousands of debt collection lawsuits across the country falsely claiming to be the real party in interest by suing "on behalf of HSBC Bank USA, N.A."

24.     EduCap's plan included concealing the lack of authorization to sue from the trustees——the only entities that have the exclusive power to enforce any legal rights pertaining to the loans because the trustees are obligated to retain all borrower payment proceeds to satisfy the Trust's note obligations.

---

[3] A chart of HSBC's historical stock prices, adjusted for dividends and splits is available online at http://finance.yahoo.com/quote/HSBC?p=HSBC.

[4] *See Interagency Statement on Sales of 100% Loan Participations* at p. 1 (Apr. 10, 1997), *available at* http://www.ots.treas.gov/_files/84056.pdf

### C. The Underlying Debt Collection Lawsuit Against Griffith

25. On February 13, 2007, a private student loan in the amount of $19,152 was disbursed to Blocker. Monthly payments in the amount of $215.02 were due beginning March 11, 2007. Griffith was a cosigner on the promissory note.

26. The note disclosure statement identifies the lender as HSBC Bank USA, N.A. and includes a recital that "you … promise to pay HSBC Bank USA, N.A. the loan amount with interest …."

27. The note also states "for value received, each of the undersigned, jointly and severally, if more than one, promise to pay to *Lender* the Loan Amount …." Lender is defined in the terms and conditions as "HSBC Bank USA, National Association."

28. Blocker defaulted on the loan by failing to remit the required payments under the promissory note.

29. Weinstock filed a debt collection lawsuit against Griffith in the District of Columbia Superior Court on May 1, 2014. Weinstock's verified complaint is styled "EDUCAP Inc. on behalf of HSBC Bank USA, National Association." Attached to Weinstock's complaint is an affidavit from Marcus Maiorca ("Maiorca") who claims under oath to have personal knowledge that Griffith "entered into a written promissory note with *EduCap*."[5]

30. During this period, Weinstock only represented EduCap. Weinstock was not employed by HSBC, retained by HSBC, did not have an attorney/client relationship with HSBC, and was not compensated by HSBC.

---

[5] Emphasis added

31. EduCap only appears peripherally in the loan documents as entitled to service loans by reviewing and receiving loan applications, processing forbearances, and checking borrower credit and income.

32. EduCap was not the lender, a party to the note or an intended third-party beneficiary.

33. EduCap was never the real party in interest and never had capacity to sue Griffith.

34. On May 26, 2015, the trial court granted summary judgment in favor of EduCap reasoning that "EduCap is a real party in interest and has the right to sue Griffith for the debt owed," because EduCap was "[t]he loan serving agent from the inception of the loan, and is properly identified as such in the caption of the complaint as "Edu[C]ap Inc., on behalf of HSBC Bank USA, N.A. The debt was never assigned because it did not need to be assigned …."

35. However, on February 24, 2016 the District of Columbia Court of Appeals reversed the trial court's grant of summary judgment holding that "EduCap was not a proper party to sue to enforce the note." The court also stated that "EduCap has never contended that HSBC was a party to the suit."

36. HSBC was required to bring suit in its own name, but EduCap used HSBC's name to conceal the fact that EduCap was merely acting as a debt collector and never had standing as the real party in interest to enforce the terms of the note.

37. More than two years after filing their lawsuit, Weinstock filed a "Motion to Substitute and/or Join" the real party in interest—HSBC—on April 14, 2016.

38. On July 11, 2016, the trial court granted EduCap's motion for "substitution of HSBC in place of EduCap. Inc. … as the new plaintiff."

39. After three years of litigation, and two different purported real parties in interest attempting to collect the debt, HSBC quickly moved to dismiss its complaint with prejudice on April 5, 2017 in a desperate attempt to avoid producing the Agreements by April 7, 2017—as ordered by the trial court—exposing the Defendants' lack of ownership of the debt, and complete absence of any rights to sue Griffith.

40. By HSBC dismissing its case with prejudice, Griffith is the prevailing party.

41. Defendants have a long, well-documented history of filing debt collection lawsuits falsely claiming to be the lender and/or real party in interest. Defendants' conduct is designed to fraudulently mislead unwitting consumers into believing EduCap and HSBC are the actual creditors to evade standing challenges by consumers.

42. In *EduCap v Rogers*,[6] a private student loan was issued by HSBC on August 10, 2006 for Rogers to attend Howard University. Defendants' complaint is styled EduCap Inc. v. Rogers "for student loan (sic) by the Plaintiff to the Defendant." Maiorca falsely claims under oath that Rogers "entered into a written promissory note with EduCap."

43. In *EduCap v Dove*,[7] a private student loan was issued by HSBC on August 21, 2007 for Dove to attend Pennsylvania State University. Defendants' complaint is styled "EduCap Inc. On Behalf of HSBC Bank NA" v Dove "for student loan (sic) by the Plaintiff to the Defendant." Maiorca falsely claims under oath that Dove "entered into a written promissory note with EduCap."

---

[6] District of Columbia Superior Court Case No. 2010 CA 006037 C

[7] District of Columbia Superior Court Case No. 2015 CA 007783 C

44.    In *EduCap v Smith*,[8] a private student loan was issued by HSBC on March 27, 2007 for Smith to attend the University of Maryland. Defendants' complaint is styled EduCap Inc. v. Smith "for a student loan by the Plaintiff to the Defendant." Maiorca falsely claims under oath "the said indebtedness represents merchandise sold/monies advanced/services performed by the plaintiff to or for the defendant."

45.    In *EduCap v Brown*,[9] a private student loan was issued by HSBC on August 4, 2006 for Brown to attend Trinity College. Defendants' complaint is styled EduCap Inc. v. Brown "for Student loan (sic) by the Plaintiff to the Defendant." Maiorca falsely claims under oath that Brown "entered into a written promissory note with EduCap."

46.    In *EduCap v Gebreyessus*,[10] a private student loan was issued by HSBC on August 29, 2006 for Gebreyessus to attend Pennsylvania State University. Defendants' complaint is styled EduCap Inc. v. Gebreyessus "for Student Loan (sic) by the Plaintiff to the Defendant." Maiorca falsely claims under oath that Gebreyessus "entered into a written promissory note with EduCap."

47.    The method and manner of Defendants' deceptive debt collection practices are intentional, willful, malicious and in open defiance of state and federal consumer protection statutes.

48.    Griffith has been injured in the form of agitation, annoyance, emotional distress, and undue inconvenience as a result of Defendants' deceptive debt collection practices.

---

[8] District of Columbia Superior Court Case No. 2011 CA 006073 C

[9] District of Columbia Superior Court Case No. 2012 CA 003544 C

[10] District of Columbia Superior Court Case No. 2012 CA 006029 C

49. Griffith has sustained actual damages, including substantial attorney's fees and costs successfully defending and appealing the underlying action as a result of Defendants' deceptive debt collection conduct.

## IV.

## **FIRST CLAIM FOR RELIEF**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15  U.S.C. § 1692 ET SEQ.**

## **(AS TO EDUCAP AND WEINSTOCK)**

50. Griffith repeats, re-alleges and incorporates by reference paragraphs 1-49, inclusive, above, as if fully set forth herein.

51. Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is designed to annoy, harass, oppress, and abuse Griffith in filing suit falsely claiming that EduCap was the real party in interest.

52. Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is designed to annoy, harass, oppress, and abuse Griffith in filing suit falsely claiming Griffith "entered into a written promissory note with EduCap."

53. Defendants violated 15 U.S.C. § 1692d(5) by using false, deceptive or misleading means to collect the debt in filing suit falsely claiming that EduCap was the real party in interest.

54. Defendants violated 15 U.S.C. § 1692d(5) by using false, deceptive or misleading means to collect the debt in filing suit falsely claiming Griffith "entered into a written promissory note with EduCap."

55. Defendants violated 15 U.S.C. §§ 1692e by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

56. Defendants violated 15 U.S.C. § 1692e by using false, deceptive or misleading means to collect the debt in filing suit falsely claiming Griffith "entered into a written promissory note with EduCap."

57. Defendants violated 15 U.S.C. §§ 1692e(5) by taking legal action that could not be taken in filing suit falsely claiming EduCap was the real party in interest.

58. Defendants violated 15 U.S.C. §§ 1692e(10) by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

59. Defendants violated 15 U.S.C. §§ 1692e(10) by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming Griffith "entered into a written promissory note with EduCap."

60. Defendants violated 15 U.S.C. § 1692f by engaging in unfair or unconscionable conduct to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

61. Defendants violated 15 U.S.C. § 1692f by engaging in unfair or unconscionable conduct to collect the debt in filing suit falsely claiming Griffith "entered into a written promissory note with EduCap."

62. Defendants' unscrupulous debt collection practices are deceptive, misleading, abusive, and unfair to the least sophisticated consumer.

**SECOND CLAIM FOR RELIEF**

**VIOLATIONS OF DISTRICT OF COLUMBIA CODE § 28-3814 ET SEQ.**

**(AS TO ALL DEFENDANTS)**

63. Griffith repeats, re-alleges and incorporates by reference paragraphs 1-62, inclusive, above, as if fully set forth herein.

64. Defendants violated § 28-3814(c)(3) by willfully filing suit falsely accusing Griffith of not paying a debt that was not owed because Defendants sold any right, title and interest in the loan through securitization.

65. Defendants violated § 28-3814(f)(5) by willfully misrepresenting the character, extent, and amount of their claim by filing suit falsely accusing Griffith of not paying a debt that was not owed because Defendants sold any right, title and interest in the loan through securitization.

66. Defendants violated § 28-3814(f)(8) by willfully attempting to collect unlawful principal, interest, attorney's fees and costs when Griffith did not owe a debt to the Defendants.

67. Defendants violated § 28-3814(f)(9) by willfully misrepresenting its status as the real party in interest in falsely claiming that Griffith "entered into a written promissory note with EduCap."

68. Defendants violated § 28-3814(g)(3) by willfully attempting to collect unlawful principal, interest, attorney's fees and costs when Griffith did not owe a debt to the Defendants.

69. Defendants violated D.C. Code § 28-3814(g)(4) by willfully engaging in unfair or unconscionable means to collect the debt by filing suit against Griffith falsely claiming to be the real party in interest.

70. Defendants violated D.C. Code § 28-3814(g)(4) by willfully engaging in unfair or unconscionable conduct to collect the debt in filing suit falsely claiming Griffith "entered into a written promissory note with EduCap."

71. Defendants are liable to Griffith for compensatory damages under D.C. Code § 28-3814(j)(1) for their willful violations of law.

72. Defendants are liable to Griffith for punitive damages under D.C. Code § 28-3814(j)(2) for their willful violations of law.

## THIRD CLAIM FOR RELIEF

### ABUSE OF PROCESS

### (AS TO ALL DEFENDANTS)

73. Griffith repeats, re-alleges and incorporates by reference paragraphs 1-72 inclusive, above, as if fully set forth herein.

74. Defendants misused the legal process by furthering their frivolous lawsuit to coerce payment from Griffith for a debt they knew they were not owed.

75. Defendants misused legal process by furthering their frivolous lawsuit for two years to harass Griffith into paying a debt they knew they were not owed.

76. Defendants falsely claimed to be the real party in interest by submitting Maiorca's perjured affidavit to enrich themselves with ill-gotten principal, interest, attorney's fees and costs—an end which would not be otherwise legally obtainable.

77. The requisite element of malice or ulterior motive should be inferred from Defendants' willful abuse of process.

78. To the extent such inference fails, malice specifically exists in that Defendants acted with a conscious disregard for the rights of Griffith because their ulterior purpose in

misusing legal process was: (1) harassing and coercing Griffith into paying a debt she did not owe; and (2) coercing payment of unlawful principal, interest and fees.

79. Defendants were a substantial factor in causing Griffith's damages, and the depravity of Defendants' conduct fulfills the requirements for an award of exemplary damages.

80. Defendants have a routine business practice of filing suits falsely claiming to be the real party in interest, further evidencing the need for an award of substantial punitive damages.

## FOURTH CLAIM FOR RELIEF

## MALICIOUS PROSECUTION

## (AS TO ALL DEFENDANTS)

81. Griffith repeats, re-alleges and incorporates by reference paragraphs 1-80, inclusive, above, as if fully set forth herein.

82. Defendants commenced and/or prosecuted the underlying debt collection action against Griffith in the District of Columbia Superior Court.

83. There was no probable cause for the Defendants' prosecution of the debt collection action because no debt was owed to Defendants and Defendants had no capacity to sue Griffith.

84. Defendants' instigation of the debt collection action was actuated by malice and/or an improper motive to collect unenforceable principal, interest, attorney's fees and costs because no debt was owed to the Defendants and the Defendants had no capacity to sue Griffith.

85. Defendants utilized the debt collection action to obtain an unlawful judgment or coerce a settlement against Griffith that they were not legally entitled to receive because no debt was owed to the Defendants and the Defendants had no capacity to sue Griffith.

86. The debt collection action has terminated in favor of Griffith based on the trial court granting dismissal with prejudice on April 20, 2017.

87. Griffith has suffered damages as a direct consequence of Defendants' malicious prosecution in the form of agitation, annoyance, emotional distress, undue inconvenience, attorney's fees and costs successfully defending the underlying debt collection action.

## PRAYER FOR RELIEF

Griffith respectfully prays that judgment be entered against Defendants for the following:

    A. Actual damages;

    B. Statutory damages;

    C. Punitive damages;

    D. Costs of suit and reasonable attorney's fees; and

    E. For such other and further relief as the court may deem proper.

## JURY DEMAND

Griffith demands trial by jury.

DATED: April 23, 2017        Respectfully submitted,

/s/ *Dean Gregory*
Dean Gregory (Bar No. 1008846)
**LAW OFFICES OF DEAN GREGORY**
1717 K Street NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 905-8058
Facsimile: (202) 776-0136
E-mail: dean@deangregory.com

*ATTORNEY FOR PLAINTIFF*