UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATASHA GRIFFITH,

       *Plaintiff*,

  v.

EDUCAP, INC.,

       *Defendant.*

No. 16-cv-1541 (DLF)

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment, *see* Griffith's Mot., Dkt. 38; EduCap's Cross-Mot., Dkt. 41, and their supplemental briefing on the basis for this Court's jurisdiction, *see* EduCap's Suppl. Br., Dkt. 47; Griffith's Suppl. Br., Dkt. 48. For the reasons that follow, the Court will dismiss the case without prejudice for lack of jurisdiction and deny the cross-motions for summary judgment as moot.

### I.    BACKGROUND

According to plaintiff Natasha Griffith, HSBC Bank extended a student loan to Robert Blocker on February 13, 2007, and Griffith co-signed the loan so that Blocker could attend Bowie State University. Third Am. Compl. ¶¶ 5, 25–26, Dkt. 23. When Blocker eventually defaulted, defendant EduCap, Inc., a student loan servicer, filed a debt collection action against Griffith in D.C. Superior Court. *Id.* ¶¶ 28–29, 31. The complaint in that action identified the plaintiff as "EDUCAP Inc. on behalf of HSBC Bank USA, National Association." *Id.* ¶ 29; *see also* Griffith's Mot. Attach. 3 (Verified Compl.) at 1, Dkt. 38-3.

On May 26, 2015, the D.C. Superior Court granted EduCap's motion for summary judgment and entered judgment against Griffith in the amount of $24,855.80, plus interest and

certain attorney fees. May 26, 2015 Order & J. at 9–10, Dkt. 41-7. In the course of that ruling, the Superior Court rejected one of Griffith's several arguments: that "Edu[C]ap [was] not the real party in interest and only HSBC ha[d] the right to file suit against her." *Id.* at 4.

In February 2016, however, the D.C. Court of Appeals reversed the grant of summary judgment on EduCap's monetary claims because EduCap was not the real party in interest, and only the real party in interest—here, HSBC—may sue to enforce a substantive right. Griffith's Mot. Attach. 3 (Feb. 24, 2016 Mem. Op. & J.) at 96–97. It then remanded "for the trial court to exercise the responsibility entrusted to it by [Federal Rule of Civil Procedure] 17(a), namely to allow 'a reasonable time for ratification of commencement of the action by, or joinder or substitution of, the real party in interest,' HSBC." *Id.* at 97 (quoting Fed. R. Civ. P. 17(a)(3)).

On remand, the trial court accepted the invitation to substitute HSBC, reasoning that there was no evidence of bad faith or "willful waiver of a fair opportunity to join" HSBC and that Griffith had "not made compelling arguments as to whether HSBC's substitution would prejudice her case." July 11, 2016 Order at 5, Dkt. 41-8. It explained that "the underlying facts, law, and loan instruments w[ould] remain the same, whether Edu[C]ap or HSBC prosecute[d] the claim." *Id.* But it refused to grant summary judgment in favor of HSBC, on the ground that Griffith would be prejudiced if she were denied an opportunity to obtain discovery against the bank. *Id.* at 5–6. HSBC then continued to prosecute its claims for nine months before it dismissed the action with Griffith's consent. *See* Griffith's Mot. Attach. 3 (Apr. 20, 2017 Order) at 100.

Meanwhile, Griffith sued EduCap, Weinstock, Friedman & Friedman, and HSBC in this Court for violations of the federal Fair Debt Collection Practices Act, violations of the D.C. Debt Collection Law (DCDCL), abuse of process, and malicious prosecution. Third Am.

Compl. ¶¶ 50–87. Among other things, she alleged that "EduCap ha[d] been filing thousands of debt collection lawsuits across the country falsely claiming to be the real party in interest by suing 'on behalf of HSBC Bank USA, N.A.,'" *id.* ¶ 23, and that it "willfully engag[ed] in unfair or unconscionable conduct to collect [Griffith's] debt in filing suit falsely claiming Griffith 'entered into a written promissory note with EduCap.'" *id.* ¶ 70. In support of this Court's jurisdiction, she alleged that the federal claim provided federal question jurisdiction and that the Court also had diversity jurisdiction because there was complete diversity of citizenship and the amount in controversy exceeded $75,000. *Id.* ¶¶ 1–2.

The parties have submitted several rounds of briefing since Griffith filed her third amended complaint.[1] In response to a motion to dismiss, this Court dismissed all but the DCDCL claim against EduCap. *See* Sept. 10, 2018 Order, Dkt. 36. Within a week, Griffith moved for summary judgment without seeking discovery. *See* Griffith's Mot.; *see also* Joint Case Mgmt. Report at 2, Dkt. 42 ("The parties agree that discovery should not commence until the Court issues its ruling on the parties' cross-motions for summary judgment."). EduCap then timely filed an opposition and cross-motion for summary judgment. *See* EduCap's Cross-Mot. And after reviewing the parties' submissions, the Court sua sponte ordered supplemental briefing "addressing whether the Court has jurisdiction over the sole remaining claim in this action" and, to the extent the parties maintain that the Court has diversity jurisdiction, explaining "with specificity how the amount in controversy exceeds $75,000." Sept. 6, 2019 Minute Order. The parties have since provided that supplemental briefing. *See* EduCap's Suppl. Br.; Griffith's Suppl. Br.

---

[1] On December 5, 2017, this case was transferred to the undersigned.

## II. LEGAL STANDARD

Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff therefore bears the burden of establishing jurisdiction. *Id.*; *see also Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). Moreover, "because it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (internal quotation marks omitted). To the contrary, courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.*; *see also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." (italics omitted)). And if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action" under Federal Rule of Civil Procedure 12(h)(3).

## III. ANALYSIS

Both parties maintain that the Court may exercise jurisdiction over this case, but they disagree on the basis of that jurisdiction. Griffith argues that the Court has diversity jurisdiction. *See* Griffith's Suppl. Br. at 2–5. EduCap argues that the amount in controversy does not permit diversity jurisdiction, but it contends that the Court should nevertheless exercise supplemental jurisdiction based on the now-dismissed federal claim. *See* EduCap's Suppl. Br. at 2–3. The Court concludes that it does not have diversity jurisdiction, and it declines to exercise supplemental jurisdiction.

### A. Diversity Jurisdiction

Under 28 U.S.C. § 1332(a), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." With respect to the amount-in-controversy requirement, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). "But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount," the court must dismiss the suit. *Id.* at 289. The D.C. Circuit has explained that, although the "legal certainty" standard is forgiving, "the burden of establishing the amount in controversy . . . rests squarely with the litigant asserting jurisdiction." *Martin v. Gibson*, 723 F.2d 989, 991 (D.C. Cir. 1983); *see also King v. Morton*, 520 F.2d 1140, 1145 (D.C. Cir. 1975) ("The burden of establishing the amount in controversy is on the person claiming jurisdiction, and the district court may question at any time whether the jurisdictional amount has been shown."). And if the plaintiff's claimed sum is "disputed by his opponent or by the court sua sponte," it is the plaintiff's burden to establish with evidence "that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount." *Payne v. Gov't of D.C.*, 559 F.2d 809, 820 & n.59 (D.C. Cir. 1977) (opinion of Robinson, J.) (footnote omitted); *see also Rosenboro v. Kim*, 994 F.2d 13, 18 (D.C. Cir. 1993) (the plaintiff must "produce evidence supporting a legal uncertainty about whether she could prove [the claimed damages]"); *McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 91 (D.D.C. 2009) ("The court lacks subject matter jurisdiction if it is highly improbable that the

amount in controversy could exceed the jurisdictional threshold, and when the plaintiff submits no evidence to the contrary." (internal quotation marks omitted)).

Griffith argues that she is entitled to more than $75,000 in (1) compensatory damages based on the attorney fees expended to defend the D.C. debt collection lawsuit and (2) punitive damages. Griffith's Suppl. Br. at 2–4. These damages, both separately and cumulatively, fail to satisfy the $75,000 amount-in-controversy requirement.

*First*, Griffith has not shown that she can recover the attorney fees as damages for the alleged DCDCL violations. Griffith alleges violations of several DCDCL provisions, all of which derive from a single misdeed: EduCap's improper assertion that it was the real party in interest to collect on a defaulted loan owed to HSBC. *See* Third Am. Compl. ¶¶ 64–70. Each of the provisions that EduCap allegedly violated also share a common damages provision. Under D.C. Code § 28-3814(j)(1), "[p]roof, by substantial evidence, that a creditor or debt collector has wilfully [*sic*] violated any provision of the [statute] shall subject such creditor or debt collector to liability to any person affected by such violation for all damages proximately caused by the violation."

Although the D.C. courts do not appear to have interpreted "proximately caused" in this context, they have previously defined proximate causation in tort actions as "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Convit v. Wilson*, 980 A.2d 1104, 1125 (D.C. 2009) (internal quotation marks omitted). And nothing in the text of the DCDCL suggests a different definition. *Cf. United States v. Monzel*, 641 F.3d 528, 536 (D.C. Cir. 2011) ("[N]othing in the text or structure of [18 U.S.C.] § 2259 leads us to conclude that Congress intended to negate the ordinary requirement of proximate cause.").

6

To establish proximate causation, Griffith argues that the $91,417.50 in fees she incurred to defend the underlying debt collection action was "the direct result of Edu[C]ap's lawsuit falsely claiming to be the lender and creditor," and she provides an affidavit and invoice detailing the fees incurred until HSBC was substituted for EduCap as the real party in interest. Griffith's Suppl. Br. at 4; *see also id.* Ex. A, Dkt. 48-1. The problem is that those fees resulted from Griffith's status as a defaulting debtor, not EduCap's error in pursuing the debt collection action in its own name. Put differently, Griffith has not shown that, even in the absence of EduCap's DCDCL violation, HSBC would not have pursued the debt collection action in its own name and Griffith would not have incurred the same attorney fees regardless. As the D.C. Superior Court explained, "the underlying facts, law, and loan instruments [were] the same," no matter whether HSBC or EduCap (on behalf of HSBC) prosecuted the action. July 11, 2016 Order at 5. That is why the court permitted the substitution of HSBC for EduCap and allowed the action to "proceed[] as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). And that is why HSBC continued to prosecute the action in its own name for nine months after the Rule 17 substitution. The Court therefore concludes to a legal certainty that Griffith could not obtain the claimed attorney fees as damages for the alleged DCDCL violations. *Cf. Baylor v. Mitchell Rubenstein & Assocs.*, 174 F. Supp. 3d 146, 161 (D.D.C. 2016) ("question[ing]" whether a jury could determine that certain emotional damages were "proximately caused" by various DCDCL violations where the "plaintiff's own statements indicate that it was the existence of the debts themselves, combined with the fact that a law firm had gotten involved, that was causing [her] to suffer emotional distress" (internal quotation marks omitted)), *aff'd in part, rev'd in part, and remanded on other grounds*, 857 F.3d 939 (D.C. Cir. 2017); *O'Connor v. Sand Canyon Corp.*, No. 14-cv-00024, 2015 WL 225423, at *4 (W.D.

7

Va. Jan. 16, 2015) (dismissing a fraud claim where it was "speculative at best" that the plaintiff would have kept her property absent the alleged fraud).

The Court also notes that, even if EduCap's error could be understood to have proximately caused Griffith to incur fees litigating the Rule 17 issue, Griffith does not provide any argument to that effect. In addition, her invoice does not indicate which fees were incurred for that purpose alone, and it is wholly implausible to suggest that even a majority—let alone more than $75,000—of the $91,417.50 in fees Griffith claims she incurred in the debt collection action were attributable to the Rule 17 issue.

*Second*, Griffith has failed to establish that she may recover punitive damages. "In applying the legal certainty test where the availability of punitive damages is the sine qua non of federal jurisdiction[,] the District Court should scrutinize the punitive damage claim to ensure that it has at least a colorable basis in law and fact." *Kahal v. J. W. Wilson & Assocs.*, 673 F.2d 547, 549 (D.C. Cir. 1982). "Liberal pleading rules are not a license for plaintiffs to shoehorn essentially local actions into federal court through extravagant or invalid punitive damage claims." *Id.*; *see also Hardaway v. Cross State Moving*, 729 F. App'x 8, 8 (D.C. Cir. 2018) (same).

To be sure, the DCDCL authorizes punitive damages for those "affected by a wilful [*sic*] violation of the [statute.]" D.C. Code § 28-3814(j)(2). But punitive damages may be awarded only if there is "a basis in the record for an award of actual damages." *Maxwell v. Gallagher*, 709 A.2d 100, 103 (D.C. 1998). And as discussed, Griffith has not established that EduCap's

8

error caused any damages.[2] Thus, the Court concludes to a legal certainty that the amount in controversy does not exceed $75,000 and diversity jurisdiction does not exist.

B.     **Supplemental Jurisdiction**

When a court lacks diversity jurisdiction, it may still exercise supplemental jurisdiction over certain state-law claims "that are so related to claims in the action within [a court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But "[w]hether to retain jurisdiction over pendent state and common law claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (internal quotation marks omitted); *see also id.* ("Pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." (alteration adopted and internal quotation marks omitted)). And "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 424 (internal quotation marks omitted).

---

[2] Indeed, Griffith's failure to establish any entitlement to compensatory damages is why *Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2019 WL 2357379, at *7–8 (D.D.C. June 4, 2019), and *Portfolio Recovery Assocs. v. Mejia*, No. 1216-cv-34184, at 8 (Mo. Cir. Ct. Nov. 4, 2015)—the cases on which Griffith relies, *see* Griffith's Suppl. Br. at 4—are inapposite. In both cases, the plaintiff, unlike Griffith, had established his or her entitlement to substantial compensatory damages. The Court also notes that, even if Griffith had established her entitlement to some small amount of compensatory damages, it is highly improbable that the Court could constitutionally award sufficient punitive damages to clear the $75,000 threshold. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (explaining that, although there is no "bright-line ratio which a punitive damages award cannot exceed," "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety"); *see also Ham v. TJX Cos.*, No. 17-cv-01463, 2018 WL 1143156, at *3 (D.D.C. Mar. 2, 2018) (citing *State Farm* and concluding that "even the inclusion of a generous punitive damages [award] does not get Plaintiff to the amount-in-controversy requirement").

This case is not so exceptional that supplemental jurisdiction remains appropriate after the dismissal of the only federal claim. The case is still in its early stages, and the parties have yet to engage in any discovery. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (dismissal appropriate "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain"); *Shekoyan*, 409 F.3d at 424 (same even though "the litigation proceeded for four years in the district court prior to the dismissal of the last of [the plaintiff's] federal claims"). Moreover, the D.C. courts, which have resolved the Rule 17 issue and presided over the underlying debt collection action, have familiarity with this case and are well-equipped to decide the novel questions of local law at issue here—including the definition of willful in the DCDCL. *See* EduCap's Br. at 14, Dkt. 41-1. In these circumstances, exercising supplemental jurisdiction would be inappropriate. *See Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 417 (D.C. Cir. 2014) ("[W]e have repeatedly held that a district court abuses its discretion when it maintains jurisdiction over a removed case presenting unsettled issues of state law after the federal claims have been dismissed.").

## CONCLUSION

For these reasons, the Court dismisses this case without prejudice for lack of jurisdiction and denies the parties' cross-motions for summary judgment as moot.

DABNEY L. FRIEDRICH
United States District Judge

September 27, 2019